[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISMISS
FACTS
The plaintiff, Charles Town Associates Limited Partnership, filed the present action against the defendant, Guy D. Dolente, Jr., one of Charles Town's limited partners and a resident of Pennsylvania. (Complaint ¶ 1). The plaintiff partnership was formed by agreement dated July 31, 1987, between the limited partners and Southmark Partners One, Ltd., a Texas limited partnership which served as general partner. (Defendant's Exhibit CT Page 4102 A p. 1-3). Charles Town is a Delaware limited partnership which had its principal place of business in Texas until 1990 when it moved to New Milford, Connecticut. (Affidavit of Bruce Weinstein ¶ 3).
In 1987, Charles Town acquired the Jeffersonian Manor nursing home located in Charles Town, West Virginia. (Complaint ¶ 2). Life Care Centers of America, Inc., a Tennessee corporation having its principal offices in Cleveland Tennessee, managed the nursing home. (See Complaint ¶ 2 and Defendant's Exhibit C p. 6). Following successful solicitation of limited partner consents, LPIMC, Inc., became the general partner of Charles Town in 1990. (Complaint ¶¶ 3, 5). At the same time, Eugene Rosen, Bruce Weinstein and John W. Galston also became general partners of Charles Town. (Complaint ¶ 5).
In July of 1991, a dispute arose between Life Care and the general partners relating to Life Care's solicitation of the consent of limited partners to remove LPIMC as general partner and replace it with Life Care. (Complaint ¶ 8). LPIMC terminated Life Care as manager of the nursing home on July 15, 1991. (Complaint ¶ 9). As a result of the termination, litigation ensued and a jury verdict was rendered on May 27, 1994, in favor of Life Care and against Charles Town and its former general partners in the amount of $700,000. (Complaint ¶¶ 13, 19). Judgment was entered on the verdict and appeal was taken to the United States Court of Appeals for the Sixth Circuit where the case remains pending. (Complaint ¶ 19).
The defendant, Dolente, on August 5, 1994, filed a derivative and class action lawsuit against the former general partners of Charles Town in the United States District Court for the District of Delaware. (Complaint ¶ 22). The Complaint in that suit alleges breach of fiduciary duty as well as violations of the federal securities laws with respect to several consent solicitations disseminated to the limited partners of Charles Town. (Complaint ¶ 22). The solicitations relate to the withdrawal of the former general partners, the sale of Jeffersonian Manor and amendments to Charles Town's partnership agreement. (Id.).
Jeffersonian Manor was sold to Litchfield Management Corporation on August 31, 1994. Litchfield Management is owned by two former general partners of Charles Town, Messrs. Rosen and Weinstein and a third party, Michael S. McGee. (Complaint ¶ 15). After the sale, the sale proceeds, except for $800,000, were CT Page 4103 distributed to the limited partners. (Complaint ¶¶ 17, 23). On or about September 26, 1994, the limited partnership made a partnership distribution to the defendant in the amount of $33,552. (Complaint ¶ 25). The distribution check was drawn on Peoples Bank, a Connecticut bank, and sent to the defendant at his residence address in Pennsylvania, where it was received, accepted and presented for payment. (Defendant's Affidavit ¶ 7).
The plaintiff brings the present action seeking the return of the defendant's partnership distribution on several grounds. The first count of the complaint alleges that the defendant's receipt of the distribution violates Delaware law, specifically Del. Code Ann. tit. 6, § 17-607. The aforementioned Delaware law holds a partner liable for receiving a distribution when he knows the limited partnership's liabilities exceed the fair value of its assets. The second count of the complaint seeks to impose a constructive trust on the defendant's distribution. The third count alleges breach of contract with respect to the partnership agreement and the fourth count seeks indemnification from the defendant for amounts Charles Town may be required to pay LPIMC and the former general partners of Charles Town as a result of the Delaware suit.
The defendant filed a motion to dismiss arguing that General Statutes § 52-59b does not confer jurisdiction over the defendant and even if the statute was satisfied, jurisdiction fails under the "minimum contacts" test and due process analysis. The defendant also argues that service of process was insufficient because the General Statutes § 52-59b does not give the court jurisdiction over the defendant and therefore any service pursuant to it is ineffective. Additionally, the defendant argues that the case should be dismissed pursuant to the prior pending action doctrine. As required by Practice Book § 155, the defendant filed a memorandum in support of its motion to dismiss along with an affidavit and other supporting documentation. The plaintiff filed a memorandum in opposition to the motion to dismiss and a supporting affidavit. The defendant then filed a reply memorandum.
"A motion to dismiss . . . has replaced the plea in abatement as the vehicle for challenging the court's jurisdiction . . . ."Concept Associates, Ltd. v. Board of Tax Review, 229 Conn. 618,625, 642 A.2d 1282 (1994). The motion to dismiss "properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . ." (Citation CT Page 4104 omitted; emphasis in original; internal quotation marks omitted.)Gurliacci v. Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). When a motion to dismiss "does not seek to introduce facts outside the record it is equivalent to [the] former motion to erase and admits all well pleaded facts, the complaint being construed most favorably to the plaintiff. . . ." (Citations omitted; internal quotation marks omitted.) Duguay v. Hopkins, 191 Conn. 222, 227,464 A.2d 45 (1983). The court must "consider the allegations of the complaint in their most favorable light." Reynolds v. Soffer,183 Conn. 67, 68, 438 A.2d 1163 (1981).
"When a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present evidence which will establish jurisdiction." Standard Tallow Corp.v. Jowdy, 190 Conn. 48, 54, 459 A.2d 503 (1983). "[W]here . . . the motion is accompanied by affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint. Barde v. Board of Trustees,207 Conn. 59, 62, 539 A.2d 1000 (1988). "Affidavits which disclose genuine issues of material fact cannot resolve the factual disputes raised by them. . . . A judicial determination of such issues must then be made." (Citation omitted.) Garden Mutual Benefit Assn. v.Levy, 37 Conn. Sup. 790, 792, 437 A.2d 141 (1981). "[A] challenge to personal jurisdiction involves a two-part inquiry." Hart,Nininger Campbell Associates, Inc. v. Rogers, 16 Conn. App. 619,624, 548 A.2d 758 (1988). "[A] trial court may exercise jurisdiction over a foreign defendant only if the defendant's intrastate activities meet the requirements both of [the Connecticut long-arm] statute and of the due process clause of the federal constitution." Thomason v. Chemical Bank, 234 Conn. 281,286, 661 A.2d 595 (1995).
I. Connecticut's Long Arm Statute
Connecticut's "long-arm" statute, General Statutes § 52-59b, provides that jurisdiction may be exercised over a nonresident who "(1) Transacts any business within the state; or (2) commits a tortious act within the state . . . or (3) or commits a tortious act outside the state causing injury to person or property within the state . . . if he (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect CT Page 4105 the act to have consequences in the state and derives substantial revenue from interstate or international commerce."
"The general statutes do not define what the phrase `transacts any business' means in the context of § 52-59b." Zartolas v.Nisenfeld, 184 Conn. 471, 475, 440 A.2d 157 (1981). "The term 'transacts business' has been construed to embrace `a single purposeful business transaction.'" Gaudio v. Gaudio, 23 Conn. App. 287,298, 580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471
(1990), quoting Zartolas v. Nisenfeld, supra, 184 Conn. 474. "In determining whether [a] plaintiff[']s cause of action arose from the defendant['s] transaction of business within this state we do no resort to a rigid formula. Rather, we balance consideration of public policy, common sense, and the chronology and geography of the relevant factors." Zartolas v. Nisenfeld, 184 Conn. 477.
The plaintiff argues that the court has jurisdiction over the defendant by virtue of his status as a limited partner of a partnership with its principal place of business in Connecticut. The plaintiff relies on two superior court decisions wherein, according to the plaintiff's interpretation, the court held that an individual's status as a limited partner in a limited partnership conducting business within the state provided a sufficient basis for a state to exercise jurisdiction over the individual pursuant to the state's long arm statute. See First Nationwide Bank v.Landino, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 446460 (February 25, 1992, Sheldon, J.); and First Union National Bank v. Brunette, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 511446 (October 23, 1992, Allen, J.).
The plaintiff's reliance on these cases, however, is misplaced and both cases are easily distinguishable from the present case. In First Nationwide Bank v. Landino, supra, the defendant executed a note in Connecticut, in favor of the partnership in which the defendant consented to personal jurisdiction in Connecticut. More significantly, however, the partnership in Landino was a Connecticut limited partnership unlike the present case where the partnership is a Delaware partnership.
The case of First Union National Bank v. Brunette, involved an action seeking to confirm a Florida judgment. The plaintiff, a Florida corporation, brought an action against the defendant in the state of Florida and judgment was rendered in favor of the plaintiff. The plaintiff then brought an action in Connecticut CT Page 4106 seeking to confirm the Florida judgment. The defendant, in opposition to a motion for summary judgment, argued that the motion for summary judgment should be denied because the Florida court lacked jurisdiction over him. The court determined that under Florida's long arm statute, the Florida court had jurisdiction over the defendant and entered judgment against the defendant. The determination was made based on the promissory note which was signed by Brunette, a limited partner in two Florida partnerships and a shareholder in two Florida close corporations. Additionally, the note at issue in the Florida case was signed by Brunette. In the present case, the partnership, although having an office in Connecticut, is organized under the laws of Delaware. If the partnership were organized under the laws of this state, the plaintiff's argument may have been persuasive.
As argued by the defendant, the general rule is that there is no personal jurisdiction over nonresident officers of a corporation where their contact with the state was only in their capacity as a corporate officer. Mozes on Behalf of General Electric Co. v.Welch, 638 F. Sup. 215, 223, 224 (D. Conn. 1986). This is true even where the corporation has it's principal place of business within the state. Id. See also Hagar v. Zaidman, 797 F. Sup. 132,137 (D.C. Conn. 1990) (General Statutes § 52-59b(a)(1) did not confer jurisdiction over individual president of the corporation where the president of the corporation transacted business in Connecticut only on behalf of the corporation); and Bross UtilitiesService Corp. v. Aboudshait, 489 F. Sup. 1366 (D.C. Conn. 1980) aff'd 646 F.2d 559 (2d Cir. 1980). Applying this general rule to the present case, the court lacks jurisdiction over the defendant under the long arm statute, General Statutes § 52-59b.
II. Due Process and "Minimum Contacts"
Ordinarily, the court will reach the second question in the jurisdictional analysis, due process and "minimum contacts, only if personal jurisdiction has attached under state law. United StatesTrust Co. v. Bohart, 197 Conn. 34, 39, 495 A.2d 1034 (1985); see also Gaudio v. Gaudio, supra, 23 Conn. App. 299; Rosenblit v.Danaher, 206 Conn. 125, 142, 537 A.2d 145 (1988). The court has found that state law does not confer jurisdiction over the defendant but will briefly discuss the second prong of the test to demonstrate that even if the court found jurisdiction under state law, minimum contacts would be lacking.
Minimum contacts must be present before a court can acquire in CT Page 4107 personam jurisdiction, such that maintenance of the suit does not offend traditional notions of fair play and justice. United StatesTrust Co. v. Bohart, supra, 197 Conn. 38; International Shoe Co. v.Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "The specific facts of each case necessarily determine the outcome of a minimum contacts analysis." United States Trust Co. v. Bohart,
supra, 197 Conn. 42, citing Kulko v. California Superior Court,436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).
One inquiry is whether "defendant's conduct and connections with the forum state are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v.Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 49
(1980). "It is the totality of the defendant's conduct and connection with this state that must be considered, on a case by case basis, to determine whether the defendant could reasonably have anticipated being haled into court here." Frazer v. McGowan,198 Conn. 243, 249, 502 A.2d 905 (1986).
The plaintiff argues that under the facts of this case, the assertion of jurisdiction over the defendant does not offend "traditionally notions of fair play and substantial justice."United States Trust Co. v. Bohart, supra, 197 Conn. 38. The plaintiff relies on the following facts which are set forth in the affidavit of Bruce Weinstein, a general partner of Charles Town: ""Charles Town . . . is a Delaware limited partnership with its office and principal place of business in New Milford, Connecticut." (Affidavit of Mr. Weinstein ¶ 3). "The defendant [a Pennsylvania resident] . . . is a limited partner of the partnership." (Id. ¶ 4). "On two occasions, in 1990 and 1991, the defendant came to Connecticut to discuss the business of the partnership . . . . On both occasions, the defendant indicated that he came to Connecticut on his own behalf and on behalf of the interests of a block limited partners of the partnership." (Id. ¶ 5). "During both meetings in New Milford, the defendant examined books and records of the limited partnership which are maintained in the offices of the partnership, and questions [the general partners] concerning the performance of the partnership." (Id. ¶ 6). "On or about September 26, 1994, the limited partnership made a partnership distribution to the defendant in the amount of $33,552.00. The distribution check was drawn on a Connecticut branch of Peoples Bank, and sent to the defendant at his residence." (Id. ¶ 7).
The court does not find the above contacts with the state, two CT Page 4108 meetings in Connecticut and the receipt of a check drawn on a Connecticut bank, sufficient minimum contacts. The defendant's affidavit represents that he purchased two limited partnership units in Charles Town in 1987, and that these units were offered and sold to him in Pennsylvania. The defendant asserts that there are approximately 53 other limited partners scattered throughout at least 15 states. (Affidavit of Mr. Dolente ¶ 3). The defendant's affidavit also indicates that he is a resident of Pennsylvania and always has been and that aside from two meetings with the general partners of Charles Town and occasionally driving through the state for personal trips he has never done any business in Connecticut. (Id. ¶ 4). Mr. Dolente admits to meeting with the general partners in Connecticut to discuss the performance of the Partnership. He stated that he reported the information he learned at these meetings to the other limited partners. (Id. ¶ 4). "No transactions took place at either meeting. . . . No transactions took place at either meeting. . . . No documents were signed . . . [and there are] no other contacts with Connecticut." (Id.)
The court finds that it would be fundamentally unfair and unforeseeable to the limited partners such as Mr. Dolente, to be haled into court in this state. The defendant has not "purposely availed [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Mozes on Behalf of General Elec. Co. v. Welch, supra,638 F. Sup. 224, quoting Hanson v. Denckla, 357 U.S. 235, 253,78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).
Based on the affidavits submitted by the parties and the allegations of the complaint read in a light most favorable to the plaintiff, the court finds that the "defendant's conduct and connections with the forum state are [not] such that he should reasonably anticipate being haled into court [here]." World-WideVolkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559,62 L.Ed.2d 49 (1980).
Because of the conclusion that Connecticut's long-arm statute did not confer jurisdiction over the defendant, the other issue raised by the defendant's motion to dismiss need not be reached.
For the reasons set forth above, the defendant's motion to dismiss is granted.
PICKETT, J. CT Page 4109