**UNITED STATES SURGICAL CORP.**

v.

**IMAGYN MEDICAL TECHNOLOGIES, INC., et al.**

No. 3:98CV216 (AHN).

United States District Court, D. Connecticut.

Sept. 10, 1998.

Ronald J. Cohen, Timothy P. Jensen, Tyler, Cooper & Alcorn, New Haven, CT, G. Brian Busey, Kenneth W. Irvin, Morrison & Foerster, Washington, DC, Harlod J. McElhinny, Carolyn M. Wiggin, Russell B. Hill, Michael A. Jacobs, Morrison & Foerster, San Francisco, CA, for Plaintiff.

Hugh F. Keefe, Lynch, Traub, Keefe & Errante, New Haven, CT, Edward R. Scofield, Zeldes, Needle & Cooper, Bridgeport, CT, J. Alan Galbraith, David C. Kiernan, Sharon L. Davis, Philip Andrew Sechler, Williams & Connolly, Washington, DC, for U.S. Surgical Corp.

### RULING ON DEFENDANTS' MOTIONS TO DISMISS OR TRANSFER

NEVAS, District Judge.

The plaintiff, United States Surgical Corporation ("USSC"), brings this diversity action against defendant Imagyn Medical Technologies, Inc. ("Imagyn") for tortious interference with contractual relations and unfair competition, and against defendant Ryan Tamura ("Tamura") for breach of contract. Now pending before the court are Imagyn's Motion for Transfer of Action and Tamura's Motion to Dismiss for Lack of Personal Jurisdiction or, in the alternative, for Transfer of Action.

For the reasons set forth below, Imagyn's motion [doc. # 6] is GRANTED, Tamura's motion [doc. # 9] is GRANTED in part and DENIED in part, and this action is hereby ORDERED transferred to the Central District of California.

### FACTS

USSC is a corporation organized and existing under the laws of the state of Delaware,

with its principal place of business in Norwalk, Connecticut. (*See* First. Am. Compl. ¶ 1.) It specializes in developing, manufacturing and selling medical products and technologies which improve patient care and lower the costs of health care. (*See id.* ¶ 2.) Specifically, USSC specializes in manufacturing and selling surgical instruments used in laparoscopic surgery. (*Id.*)

Imagyn is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Newport Beach, California. (*See id.* ¶ 3.) Imagyn also manufactures and sells medical and surgical devices, specifically those used in laparoscopic surgery, and is thus one of USSC's direct competitors. (*Id.*)

Tamura, who resides in Trabuco Canyon, California, was employed by USSC as a salesperson from September, 1991 to December, 1997. (*See id.* ¶ 4.) Currently, he is employed by Imagyn in the same capacity. (*Id.*)

During his employment with USSC, Tamura was provided with, and had access to, trade secrets, customer lists, customer usage and other account history information, pricing policies, operational methods, surgeon contacts, marketing plans and strategies, product development techniques and plans, sales and personnel performance information, business and personnel acquisition plans, and pending research projects. (*See id.* ¶ 9.) Because of his specialized training[1] and sales duties, USSC entrusted Tamura with, *inter alia*, the identities and backgrounds of customers interested in purchasing USSC products, the amounts and types of products requested, the prices charged and the profit margins for such products, the identities of suppliers from whom USSC obtained supplies, and the prices charged by these vendors. (*See id.* ¶ 10.)

On September 9, 1991, at the start of his employment with USSC, Tamura signed an employment contract. (*See id.* ¶ 12.) Under this contract, he agreed that he would not "perform salesperson services" in competi-tion with USSC during his employment there and for a period of two years following his termination. (*See id.* ¶ 14.) He further agreed that, following his termination, he would keep secret and would not disclose the confidential information of USSC or any of its subsidiaries. (*See id.* ¶ 15.) Lastly, he agreed that, for a period of two years following his termination, he would not solicit or encourage any USSC employees to leave the company and also that he would not solicit employees who had left the company less than one year earlier. (*See id.* ¶ 16.)

On or about December 17, 1997, Tamura tendered his resignation, to be effective on December 30, 1997. (*See id.* ¶ 17.) At the time, he was employed as a "full-line" salesperson for Auto Suture Company, a division of USSC which sells various medical and surgical instruments. (*See id.* ¶ 8.)

Presently, Tamura is employed by Imagyn as a sales manager, selling products in direct competition with USSC in a geographic area almost identical to the area in which he worked when he was employed by USSC. (*See id.* ¶¶ 18–19.) According to USSC, since Tamura started with Imagyn, he has contacted one or more USSC employees in an effort to recruit them for Imagyn. (*See id.* ¶ 20.) In addition, USSC claims that Tamura, in the course of his employment with Imagyn, has disseminated false information about USSC. (*See id.* ¶ 21.) Also, USSC alleges that Tamura, in his position as a sales manager, will rely upon, and use for Imagyn's benefit, confidential information that he learned during his employment with USSC. (*See id.* ¶ 19.)

In Count One, USSC asserts a breach of contract claim against Tamura, alleging that he breached his covenant not to compete, his covenant not to use or disclose confidential USSC information and his covenant not to solicit USSC employees. (*See id.* ¶¶ 24–26.) USSC further claims that it has suffered and will continue to suffer irreparable harm because Tamura continues to use confidential USSC information to improve Imagyn's sales. (*See id.* ¶¶ 27–28.) Count Two as-

---

1. USSC requires all new salespersons to complete a rigorous 240–hour training program. Upon completion of this program, a salesperson becomes certified as a "wound close technician," permitting him to "scrub in" with surgeons and provide technical assistance on the proper use of USSC products. (*See* First Am. Compl. ¶ 7.)

serts that Imagyn, despite its knowledge and familiarity with USSC's standard employment agreement, deliberately and improperly induced a breach of this agreement by "(a) obtaining Tamura's services to sell its competitive products, (b) gaining access to [USSC's] confidential information, and (c) gaining a conduit through which to solicit other [USSC] employees." (*Id.* ¶ 32.) According to USSC, Imagyn, in order to gain a competitive advantage, is scheming to obtain both access to confidential USSC information and a means to solicit other USSC employees.[2] (*See id.* ¶ 33.) Lastly, Count Three incorporates the allegations in Count Two and claims that these allegations support a cause of action against Imagyn for unfair competition. (*See id.* ¶¶ 36–39.)

## DISCUSSION

Imagyn moves to transfer venue to the Central District of California because (1) venue is not proper in this district; and (2) the convenience of the parties favors transfer. Tamura joins these arguments, but also argues, in the first instance, that the court lacks personal jurisdiction over him.

## I. *Imagyn's Motion to Transfer Venue*

 Under 28 U.S.C. § 1391(a), venue is proper in a diversity case in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."[3] 28 U.S.C.A. § 1391(a) (West Supp.1998). The plaintiff's chosen forum need not have the "most substantial contacts to the dispute." *Neufeld v. Neufeld*, 910 F.Supp. 977, 986 (S.D.N.Y.1996) (citation and internal quotations marks omitted). Rather, "it is sufficient that a substantial part of the

events occurred [in the forum state], even if a greater part of the events occurred elsewhere." *Id.* In other words, the court should not consider which of two or more potential forums is the best one, but should simply decide whether the forum in question had a "substantial connection" to the plaintiff's claims. *See Setco Enterprises Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir.1994).

None of USSC's claims against Imagyn have a substantial nexus to this district. USSC reliance on Tamura's employment contract, which was executed in Connecticut, is not persuasive. Regardless of whether this contract is sufficient to establish a nexus between Tamura and Connecticut, it is insufficient to establish one between Imagyn and Connecticut. All of the alleged tortious conduct engaged in by Imagyn occurred in California. For that matter, while Tamura's employment contract was executed in Connecticut, all of his conduct which allegedly breached this contract also occurred in California. Thus, Connecticut's only connection to Imagyn is that it is the state where Tamura signed the employment contract with which Imagyn is alleged to have interfered. This certainly does not amount to the substantial connection necessary to establish proper venue.[4]

## II. *Tamura's Motion to Dismiss*

Tamura claims that the court lacks personal jurisdiction over him because he does not have sufficient contacts with this district. The court disagrees.

 In a diversity action, a federal district court looks to state law to determine if there is personal jurisdiction over a foreign individ-

---

**2.** Within forty-five days of filing the First Amended Complaint, USSC alleges that Imagyn hired at least one other USSC sales representative, Pamela Hibler ("Hibler"). (*See* First Am. Compl. ¶ 33.) Like Tamura, Hibler also had an employment agreement with USSC which included various restrictive covenants. (*Id.*)

**3.** Section 1391(a) provides, in its entirety, that venue is proper in

 (1) a judicial district where any defendant resides, if all of the defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise

to the claim occurred ..., or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C.A. § 1391(a) (West Supp.1998). In light of USSC's reliance on subsection (2) of this statute, the court need not address Imagyn's arguments that venue is not proper under subsections (1) and (3).

**4.** Because the court holds that venue is not proper in Connecticut as to Imagyn, it need not address Imagyn's alternative argument that California is the more convenient forum.

ual. *Arrowsmith v. United Press International*, 320 F.2d 219, 231 (2d Cir.1963); *Fuehrer v. Owens–Corning Fiberglas Corp.*, 673 F.Supp. 1150, 1153 (D.Conn.1986); *Air Kaman, Inc. v. Penn–Aire Aviation Inc.*, 542 F.Supp. 2, 3 (D.Conn.1981). This requires a two tiered inquiry: (1) does the Connecticut long-arm statute reach the foreign individual; and, if so, (2) does the statute's jurisdictional reach as applied to that foreign individual meet the "minimum contacts" requirement to satisfy constitutional due process. *See Fuehrer,* 673 F.Supp. at 1153; *Air Kaman,* 542 F.Supp. at 3; *McFaddin v. National Executive Search, Inc.,* 354 F.Supp. 1166, 1168 (D.Conn.1973); *see also World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The plaintiff need only make a *prima facie* showing, through affidavits and other materials, that the two tiered inquiry is satisfied. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985); *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). Regardless of the controverting evidence put forth by the defendant, the court must resolve all doubts in the plaintiff's favor. *See A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir.1993); *Hoffritz,* 763 F.2d at 57.

### A. The Connecticut Long–Arm Statute

■ Under the Connecticut long-arm statute, the court may exercise personal jurisdiction over any nonresident who "[t]ransacts any business within the state."[5] Conn. Gen.Stat. Ann. § 52–59b (West 1991). This phrase has been interpreted "to embrace a single purposeful business transaction." *Zartolas v. Nisenfeld,* 184 Conn. 471, 474, 440 A.2d 179 (1981).

Tamura claims that he has not transacted business in Connecticut because he never resided in Connecticut, owned real or tangible property in Connecticut, or maintained bank accounts, an office, a business, a part-

nership or a joint venture here. He further argues that all of his dealings with USSC took place in California, not Connecticut. The court, however, is not persuaded.

In *Hart, Nininger & Campbell Assoc., Inc. v. Rogers,* 16 Conn.App. 619, 548 A.2d 758 (1988), the Connecticut Appellate Court, in a breach of contract suit by a Connecticut employer against three former non-resident sales representatives, held that the "transacts business" requirement of the long arm statute is satisfied where the defendants (1) signed their employment contracts in Connecticut; (2) came to Connecticut for quarterly business meetings; (3) kept in regular phone contact with the Connecticut offices; and (4) received expense reimbursement from Connecticut. *See id.* at 624–25, 548 A.2d 758. While Tamura's signing of his employment contract in Connecticut could constitute the "single, purposeful business transaction" sufficient to satisfy the long arm statute, he also (1) participated in a six week training program in Connecticut; (2) attended various strategy meetings in Connecticut; (3) was often in telephone contact with USSC's Connecticut offices; and (4) submitted his expenses for reimbursement to, and received his salary, commissions and expense reimbursement from, USSC's Connecticut offices. Under the court's holding in *Hart,* this type of activity is sufficient to bring Tamura within the reach of Connecticut's long arm statute.

### B. Constitutional Due Process

The court must next determine whether the statutory reach of the long arm statute violates constitutional due process. *See Hover v. Asbestos Corp.,* 678 F.Supp. 370, 372 (D.Conn.1986). Under the due process standard, a nonresident must have "minimum contacts" with the forum state. *Id.; see also World–Wide Volkswagen,* 444 U.S. at 291, 100 S.Ct. 559; *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154. To have these minimum contacts, a defendant must purposely avail

---

5. While there are other circumstances under which a foreign individual can be brought within the ambit of the Connecticut long arm statute, they are not relevant here. *See* Conn. Gen.Stat. § 52–59b (stating that a court may also exercise personal jurisdiction over a nonresident where that individual (1) commits a tortious act in the state; (2) commits a tortious act outside the state which causes injury in the state; or (3) owns, uses or possesses real property within the state).

himself of the privileges and benefits of the forum state. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). As the court held in *World–Wide Volkswagen,* the defendant's "conduct and connection with the forum [s]tate [should be] such that he should reasonably anticipate being haled into court there." [6] 444 U.S. at 297, 100 S.Ct. 559.

In this case, asserting jurisdiction over Tamura in Connecticut "comports with traditional notions of fair play and substantial justice." *Chaiken v. VV Pub. Corp.,* 119 F.3d 1018, 1028 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998) (citation and internal quotation marks omitted). The claim against Tamura is simply that he breached his employment contract, a contract that he entered into in Connecticut. By signing this contract in Connecticut, attending a six-week training session in Connecticut, coming to sporadic sales strategy meetings in Connecticut, making telephone calls to Connecticut, and submitting his expenses for reimbursement to Connecticut, Tamura has sufficiently availed himself of the privileges of this state to be subject to jurisdiction here. He cannot seriously argue that he could not have anticipated being haled into court in Connecticut, given that it is USSC's principal state of business and that he spent significant amounts of time here in connection with his employment. Thus, the court concludes that, under the circumstances of this case, it is reasonable for this court to assert jurisdiction over Tamura.

### III. *Tamura's Motion to Transfer Venue*

#### A. *Improper Venue*

■ As stated earlier, venue is proper in any district in which "a substantial part of the events occurred . . ., even if a greater part of the events occurred elsewhere." *Neufeld,* 910 F.Supp. at 986 (citation and internal quotations marks omitted). The court should simply consider whether the forum selected has a significant connection to the plaintiff's claims. *See Setco Enterprises,* 19 F.3d at 1281.

The gravamen of USSC's complaint is Tamura's breach of his employment contract. While this contract was to be performed, and was allegedly breached, in California, Tamura negotiated and executed the contract in Connecticut, where USSC's principal place of business is located. Also, in connection with this contract, Tamura attended a six-week training class and sporadic sales strategy meetings in Connecticut. Thus, venue is proper in Connecticut. Although a greater number of events took place in California, Tamura's negotiation and execution of his contract in Connecticut, along with his training and sporadic visits here, create a sufficiently significant connection to the state to render venue proper. *See Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.,* 927 F.Supp. 731, 736 (S.D.N.Y.1996) (holding that where a claim is based on a breach of contract, courts considering whether venue is proper "consider a number of factors, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred").

#### B. *More Convenient Forum*

■ Similar to the common law doctrine of forum non conveniens, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil

---

**6.** Under the due process requirements for personal jurisdiction, a court can exercise either "general" or "specific" jurisdiction over a defendant. *See Chaiken v. VV Pub. Corp.,* 119 F.3d 1018, 1027–28 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998). General jurisdiction exists where a defendant's continuous contacts with a particular forum subject him to jurisdiction there even though these contacts are unrelated to the allegations that form the basis of the suit. *Id.* Specific jurisdiction exists where (1) the claim arises out of the defendant's contacts with the forum state; and (2) the defendant "purposely availed" himself of the privileges of that state and therefore could have anticipated being "haled into court" there. *See id.* at 1028. Here, USSC asserts that the court has *specific* jurisdiction over Tamura because its claim against him arises out of his forum contacts, i.e., his employment contract. Thus, the court limits its analysis to this argument and does not analyze whether it has general jurisdiction over Tamura.

action to any other district or division where it might have been brought." 28 U.S.C.A. § 1404(a) (West 1993). Pursuant to § 1404, a transfer of venue may be made upon motion by either of the parties or by the court *sua sponte.* *See Clisham Management, Inc. v. American Steel Building Co.,* 792 F.Supp. 150, 157 (D.Conn.1992); *Mobil Corp. v. S.E.C.,* 550 F.Supp. 67, 69 (S.D.N.Y.1982); *see also I–T–E Circuit Breaker Co. v. Becker,* 343 F.2d 361, 363 (8th Cir.1965); 15 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 3844, at 208–209 (2d ed.1976).

Motions for transfer of venue fall within "the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip., Corp.,* 980 F.2d 110, 117 (2d Cir.1992) (citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). The purpose of section 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Eskofot A/S v. E.I. Du Pont De Nemours & Co.,* 872 F.Supp. 81, 94 (S.D.N.Y.1995) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)) (internal quotation marks omitted).

■ Generally, to determine whether transfer of venue is appropriate, the court should consider:

(1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Eskofot,* 872 F.Supp. at 95. The moving party bears the burden of establishing that there should be a change of venue. *See Filmline (Cross–Country) Productions, Inc. v. United Artists Corp.,* 865 F.2d 513, 521 (2d Cir.1989).

While Connecticut is a proper venue for USSC's claims against Tamura, California is the more convenient forum.[7] First, virtually all of the witnesses to be called in this case reside in California.[8] *See In re Eastern District Repetitive Stress Injury Litig.,* 850 F.Supp. 188, 194 (E.D.N.Y.1994) (stating that the "[c]onvenience of witnesses is the most powerful factor governing the decision to transfer a given case"). Next, most or all of the documents relevant to this litigation are located in California. Third, if Tamura was forced to litigate this case in Connecticut, he would suffer possibly extreme inconvenience, both because of the travel expenses and the time that he would have to take off from work. Fourth, while California has significant contacts to the parties involved and their respective witnesses, Connecticut has virtually no connection to the parties, witnesses, or factual allegations made in the complaint. Lastly, USSC's choice of forum is entitled to little deference because the events giving rise to this case did not occur in Connecticut.[9] *See In re Eastern District*

---

7. While Tamura's employment contract did not *exclusively* confer jurisdiction upon the courts of any state, it did state that the parties intended to "confer jurisdiction to enforce the [r]estrictive [c]ovenants upon the courts of any jurisdiction within the geographical scope of such [c]ovenants." Thus, because the covenants in Tamura's contract applied to his employment in California, at a minimum, this contract conferred jurisdiction upon that state's courts.

8. In fact, if the case goes forward in Connecticut, the third-party California witnesses not under the control of either side would not be subject to compulsory process in this district. *See* Fed. R.Civ.P. § 45(b)(2); *see also Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 511, 67 S.Ct. 839, 91 L.Ed.

1055 (1947) (stating, "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their case on deposition, is to create a condition not satisfactory to court, jury, or most litigants").

9. Tamura argues that, under the section of the contract which "confer[s] jurisdiction to enforce the [r]estrictive [c]ovenants upon the courts of any jurisdiction within the geographical scope of such [c]ovenants," California law will apply to this case. On the other hand, USSC argues that, under the section of the employment contract which specifically states that it "shall be governed by, and construed according to, the law of the State of Connecticut," Connecticut law will

*Repetitive Stress Injury Litig.,* 850 F.Supp. at 194.

## CONCLUSION

For the reasons stated above, Imagyn's Motion for Transfer of Action [doc. # 6] is GRANTED, and Tamura's Motion to Dismiss for Lack of Personal Jurisdiction or, in the alternative, for Transfer of Action [doc. # 9] is GRANTED in part and DENIED in part. The Clerk of the Court is hereby ordered to transfer this case to the Central District of California.

apply to this case. However, the determination of which state's laws will apply to this case is *not* relevant to the court's determination of whether, for the convenience of the parties, it should transfer venue.