The AMERBELLE CORPORATION,
Plaintiff,

v.

Jimmie HOMMEL and Color Works, Inc., Defendants.

No. 3:03CV355 PCD.

United States District Court,
D. Connecticut.

July 2, 2003.

Glenn A. Duhl, Jennifer M. Rockwell, Siegel, O'Connor, Zangari, O'Donnell & Beck, Hartford, CT, for Amerbelle Corp, plaintiff.

Robert Reginald Simpson, Attorney, Karen T. Staib, Shipman & Goodwin, Thomas W. Edgington, Updike, Kelly & Spellacy, P.C., Hartford, CT, L. Eric Ebbert, The Anderson Firm, Kingsport, TN, for Jimmie R. Hommel, Colorworks Inc, defendants.

### RULING ON MOTION TO DISMISS

DORSEY, District Judge.

Defendants move to dismiss this complaint for lack of personal jurisdiction. For the reasons set forth herein, the motion is granted as to Defendant Color Works, Inc.

## I. BACKGROUND

Plaintiff, The Amerbelle Corporation ("Amerbelle"), is a Connecticut corporation authorized to do business in Connecticut. Compl. ¶ 1. Defendant, Jimmie Hommel ("Hommel"), was formally employed by Amerbelle as a laboratory manager from 1998 until 2001, during which time Hommel resided in Connecticut. Id. ¶ 2. Defendant, Color Works, Inc. ("Color Works"), is a Tennessee corporation not authorized to do business in Connecticut. Id. ¶ 3. Hommel is not alleged to live presently in Connecticut.

On November 3, 1997, Amerbelle hired Hommel as a laboratory manager. Pl.'s Compl. ¶ 11. On that date, Hommel entered into a written confidentiality agreement with Amerbelle providing that he would not disclose Amerbelle's trade secrets. Id. ¶ 12. While still employed by Plaintiff, Color Works offered Hommel a position that Hommel later accepted. Pl.'s Opp. Mem., Ex. A. Hommel's employment with Amerbelle ended on May 25, 2001. Compl. ¶ 15. Hommel allegedly has since contacted and solicited the business of Plaintiff's largest customer, which is located in the State of New York. Id. ¶ 19. On or about June 27, 2001, and again on July 9, 2001, Plaintiff informed Color Works of Hommel's confidentiality agreement. Id. ¶ 25.

Plaintiff alleges breach of contract, promissory estoppel, tortious interference of both contract and business relations, and misappropriation of trade secrets by Defendant Hommel. Furthermore, Plaintiff alleges conspiracy, tortious interference with contract, misappropriation of trade secrets, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), CONN. GEN. STAT. § 42–110a, by Defendant Color Works.

## II. DISCUSSION

Defendants argue that this Court lacks personal jurisdiction over them. Furthermore, they argue that Connecticut's long-arm statutes do not apply and the exercise of jurisdiction does not comport with due process.

### A. Standard for Motion to Dismiss

 "When a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff has the burden of proving that the court has jurisdiction over the defendant." *Divicino v. Polaris Indus.*, 129 F.Supp.2d 425, 428 (D.Conn.2001) (citing *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566–67 (2d Cir.1996)). "When there has been no discovery conducted, the plaintiff need only assert 'facts constituting a prima facie showing of personal jurisdiction' to defeat a motion to dismiss." *Jarrow Formulas, Inc. v. Int'l Nutrition Co.*, 175 F.Supp.2d 296, 300 (D.Conn.2001) (quoting *PDK Labs Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997)). When dealing with a motion to dismiss for lack of personal jurisdiction, "in the absence of an evidentiary hearing or a trial on the merits, all pleadings and affidavits are construed in the light most favorable to the plaintiff." *Jarrow Formulas, Inc.*, 175 F.Supp.2d at 300 (citing

*Sherman Assocs. v. Kals,* 899 F.Supp. 868, 870 (D.Conn.1995)) Additionally, "regardless of the controverting evidence put forth by the defendant, the court must resolve all doubts in the plaintiff's favor." *Surgical Corp.,* 25 F.Supp.2d at 44 (citing *A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir.1993)).

## B. Personal Jurisdiction Analysis

▮▮▮ In a diversity suit, a federal district court will look to the law of the forum state to resolve the question of personal jurisdiction as to an out-of-state party. *United States Surgical Corp. v. Imagyn Med. Tech.,* 25 F.Supp.2d 40, 43 (D.Conn. 1998) (citing *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 231 (2d Cir.1963)). Questions of personal jurisdiction are resolved through a two-step inquiry: (1) does the Connecticut long-arm statute reach the foreign party; and, if so, (2) does the exercise of jurisdiction meet the "minimum contacts" requirement and thus satisfy constitutional due process. *See United States Surgical Corp.,* 25 F.Supp.2d at 44; *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

## C. Applicability of Connecticut's Long–Arm Statutes

### 1. Hommel is Within the Reach of § 52–59b(a)

▮▮▮ Hommel argues that CONN. GEN. STAT. § 52–59b(a)(1), providing for jurisdiction when a defendant "transacts any business in the state", does not support personal jurisdiction over him because the statute only applies to "current" transactions. Mot. Dis. at 6. Plaintiff replies that this Court has jurisdiction under CONN. GEN. STAT. § 52–59b(a)(1) given Hommel's signing an employment agreement in Connecticut while working and residing there.[1]

The Connecticut Supreme Court has interpreted the language of CONN. GEN. STAT. § 52–59b(a)(1) "to embrace a single purposeful business transaction." *Zartolas v. Nisenfeld,* 184 Conn. 471, 474, 440 A.2d 179 (1981). Plaintiff argues jurisdiction has been found in similar circumstances and that Hommel's signing an employment contract in Connecticut constitutes the "single, purposeful business transaction" that is sufficient to satisfy the Connecticut long-arm statute. *See United States Surgical Corp.,* 25 F.Supp.2d 40, 44 (D.Conn. 1998) (finding jurisdiction where defendant also participated in six-week training program in Connecticut, attended various strategy meetings in Connecticut and received salary from plaintiff's Connecticut offices). Additionally, the Connecticut Appellate Court, in a breach of contract suit by a Connecticut employer against three former non-resident employees, found the "transacts any business" requirement was satisfied where the defendants signed their employment contracts in Connecticut, came to Connecticut for quarterly business meetings, and received expense reimbursement from Connecticut. *See Hart, Nininger & Campbell Assoc., v. Rogers,* 16 Conn.App. 619, 624–25, 548 A.2d 758 (1988).

In both *United States Surgical Corp.* and *Hart, Nininger & Campbell Assoc.,* neither of the defendants ever lived in Connecticut and both plaintiffs brought their suit after the respective defendant was no longer employed by them. Accordingly, personal jurisdiction was found to exist over both out-of-state defendants due to a one time business transaction that occurred some time prior to the relative

---

1. Defendant did not file a response to Plaintiff's Memorandum in Opposition and thus does not address Plaintiff's arguments.

cause of action. Therefore, Defendant's contention that the "transacts any business" language of § 52–59b(a)(1) applies only to current transactions is without merit.

In the case before us, Hommel executed his employment contract in Connecticut, worked in Connecticut, resided in Connecticut throughout his entire employment with Plaintiff, and received paychecks that were drawn on Connecticut banks. Horowitz Aff. ¶ 6–8. Hommel's actions are therefore adequate to bring him within the reach of Connecticut's long-arm statute.

### 2. Color Works is Beyond the Reach of the Connecticut Long–Arm Statutes

■ The only basis for jurisdiction clearly argued by Plaintiff is § 33–929(f)(4).[2] Pl.'s Resp. Mot. Dis. at 16. Plaintiff argues that Color Works has tortiously interfered with a contract between Plaintiff and Defendant Hommel, and that this conduct occurred in Connecticut because Color Works purposefully solicited Hommel while he was employed by Plaintiff in Connecticut. *Id.* Plaintiff further argues that Hommel subsequently misappropriated trade secrets and confidential information by soliciting Plaintiff's customers.[3] (*Id.* at 17).

Plaintiff's reliance on *Smith v. Snyder*, No. CV 990362743S, 2000 WL 739610, at *2 (Conn.Super.Ct. May 23, 2000), and *Gelinas v. Smith*, No. 38 78 30, 1991 WL 225165, at *2 (Conn.Super. Oct. 25, 1991),

as standing for the proposition that Hommel's present status as an agent of Color Works necessarily confers jurisdiction over the foreign corporation employing him, is misplaced.[4] The present case is distinguishable as Plaintiff has overlooked the fact that the individual defendants in both *Snyder* and *Gelinas* allegedly committed their tortious acts not only while acting as agents for their respective foreign corporations, but also while physically present in Connecticut. *See Snyder*, 2000 WL 739610, at *1; *Gelinas*, 1991 WL 225165, at *2. Plaintiff provides no legal authority that confers jurisdiction over a corporation because of such an after-the-fact relationship, the claim here not being founded on any impropriety in Amerbelle's offer of employment.

■ Under the plain language of § 33–929(f)(4), a court need only inquire as to the place where the tort occurred because "the statute requires tortious *conduct in this state*." *See Bross Utils. Serv. Corp. v. Aboubshait*, 489 F.Supp. 1366, 1373 (D.Conn.1980) (emphasis in original). Therefore, jurisdiction may be founded on § 33–929(f)(4) only if the tortious conduct occurred in Connecticut, regardless of whether the injury was felt in Connecticut from tortious activity occurring outside Connecticut. *See Gen. Star Indem. v. Anheuser–Busch Cos.*, NO. 3:97–CV–2542 (EBB), 1998 WL 774234 *5 (D.Conn.1998); *Marvel Prods. v. The Fantastics*, 296 F.Supp. 783, 787 (D.Conn.1968).

---

**2.** Connecticut General Statutes § 33–929(f)(4) provides in relevant part: "Every foreign corporation shall be subject to suit in this state ... on any cause of action arising out of tortious conduct in this state ...."

**3.** Defendants limit their argument as to the inapplicability of § 33–929(f)(1) and do not address subsection (4).

**4.** In *Gelinas*, the plaintiff relied on Conn. Gen. Stat. §§ 52–59b(a)(2) and 33–411c(4) [now

33–929(f)(4)] to assert personal jurisdiction over the nonresident individual defendant and the corporation for which he worked. *See Snyder*, 2000 WL 739610, at *2 (citing *Gelinas*, 1991 WL 225165, at *1–2). The motion to dismiss for lack of personal jurisdiction was denied because the plaintiff alleged that the tortious acts of one of the defendants were also made on behalf of the other defendant corporation subjecting the corporation to suit under § 33–411(c)(4). *Id.*

This conclusion is further supported by comparing the text of the long-arm statute applicable to individuals to the corporate long-arm statute. Section 52–59b, the long-arm statute applicable to individuals, has two distinct sub-sections. One applies to tortious acts done "within the state" and the other applies to tortious acts done "outside the state, causing injury to a person within the state." Section 33–929(f), applicable to corporations, limits jurisdiction to causes of action arising out of tortious conduct "in this state." *See Bross,* 489 F.Supp. at 1372–73 (noting that while Connecticut's long-arm statute applicable to non-resident individuals has a provision subjecting them to jurisdiction for tortious acts done outside the state having an effect in the state, there is no similar provision for foreign corporations); *see also Chaiken v. VV Publ.,* 119 F.3d 1018, 1026 (2d Cir. 1997) (committing a tortious act in a foreign state, with the knowledge that the result will be felt in this state, does not constitute an act committed in the state, as such would render the section of the long-arm statute conferring jurisdiction over a defendant for tortious conduct outside the state "a nullity").

The statute's plain meaning should control here. "Tortious conduct in the state," when given its literal interpretation, means that the alleged tortious act must have actually occurred in Connecticut. If the Legislature intended Connecticut's long-arm statute to reach foreign corporations who commit torts outside of Connecticut, it would have expressly done so as it did with § 52–59b.

There is no indication that Color Works engaged in tortious acts within Connecticut. Amerbelle does not allege that Color Works had knowledge of Hommel's confidentiality agreement until Plaintiff notified them approximately one month after Hommel was already employed by Color Works. Pl.'s Resp. Mot. Dis. at 3. Fur- thermore, the only customer that Plaintiff claims Defendants contacted and allegedly solicited since the start of Hommel's employment with Color Works is located in the State of New York. *Id.* at 3–4. Therefore, neither Color Works contacting Hommel while still employed in Connecticut, nor the alleged solicitation of business in the State of New York, constitutes tortious activity in Connecticut necessary to support jurisdiction over a non-resident corporation under § 33–929(f)(4).

Lastly, Plaintiff argues that Color Works is subject to personal jurisdiction of this Court under CONN. GEN. STAT. § 52–59b. Pl.'s Resp. Mot. Dis. at 17. In making this argument, Plaintiff relies on *Montalvo v. The Adirondack Trust Co.,* No. CV020459602S, 2002 WL 1573360, at *1 (Conn.Super. June 19, 2002). Although § 52–59b was applied to a foreign corporation in *Montalvo,* there is no indication as to why such application was found to be appropriate. Section 52–59b, by its express language, applies to "jurisdiction over any non-resident individual, or foreign partnership, or his or its executor or administrator." Section 33–929(f) applies to "foreign corporations." *See Milne v. Catuogno Court Reporting Servs.,* 239 F.Supp.2d 195, 198 (D.Conn.2002) (stating that § 52–59b does not apply to foreign corporations and cannot be the basis of long-arm jurisdiction over a defendant). As Color Works is neither an individual nor a partnership, § 52–59b does not apply. Therefore, Defendant Color Works is not within the reach of any applicable Connecticut long-arm statutes and the claims against Color Works are dismissed.

### D. Due Process

As Defendant Hommel's conduct falls within the reach of the applicable long-arm statute, the relevant question becomes

whether the exercise of jurisdiction comports with due process.

■■■■■ The due process requirement for personal jurisdiction shields a person without significant ties to the forum state from being haled into a foreign court. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). By requiring "fair warning" that an individual's activities in a state may subject him to suit there, the Due Process Clause protects that person's liberty interest and "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). "A defendant's conduct and connection with the forum state should be such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

■■■■■ The due process test for personal jurisdiction has two related components: the "minimum contacts" analysis and the "reasonableness" analysis. *Metro. Life Ins. v. Robertson–Ceco Corp.,* 84 F.3d 560, 567 (2d Cir.1996). Initially, the court must determine if the defendant has sufficient minimum contacts with the forum state to justify the court's exercise of personal jurisdiction. *See Metro. Life,* 84 F.3d at 567 (*citing Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154). "To have sufficient minimum contacts, a defendant must purposely avail himself of the privileges and benefits of the forum state." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)

■■■■■ Each of Plaintiff's counts relate to the confidentiality agreement Hommel signed in Connecticut and the trade secrets he acquired during his tenure with Plaintiffs' corporation located in Connecticut. By executing his written confidentiality agreement in Connecticut, working in Connecticut for more than three years, residing in Connecticut during all times of employment, and receiving paychecks drawn from Connecticut banks, Hommel has sufficiently availed himself of the privileges of Connecticut. *See United States Surgical Corp.,* 25 F.Supp.2d at 45. Hommel's contacts with Connecticut were "continuous and systematic" during his three-year tenure with Plaintiff, and as a result satisfies the minimum contacts requirement.

■■■■ The second step of the Due Process analysis inquires as to whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *See Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154. In other words, is it reasonable in the context of the specific case. *Id.* Asserting jurisdiction over Hommel in Connecticut is certainly reasonable. Plaintiff has a legitimate interest in this suit proceeding in Connecticut. Plaintiff is not only domiciled here, but Connecticut is also the location of pertinent evidence and witnesses. Additionally, Hommel cannot argue that he was unaware that he could be subjected to a lawsuit in Connecticut for allegedly breaching an employment contract that was not only signed in Connecticut, but was also the principal place of his employer's business where he worked for over three years.

■■■■ Furthermore, "a state generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out of state actors." *Burger King,* 471 U.S. at 473, 105 S.Ct. 2174. It usually will not be unfair to subject the defendant to the burdens of litigating in another state for disputes relating to his activities in such state. *Id.* at

474, 105 S.Ct. 2174. In the present matter, litigation in Connecticut is not "so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Id.* at 478, 105 S.Ct. 2174. Hommel has not shown, nor are there factors present, that would make defending this action in Connecticut gravely and unfairly inconvenient. Therefore, this Court finds that subjecting Hommel to jurisdiction in Connecticut does not offend due process.[5]

## III. CONCLUSION

Defendant's motion to dismiss (Doc. 8) is hereby **granted in part**. All claims against Defendant Color Works, Inc., are hereby dismissed.

SO ORDERED

---

**5.** Because the requisite Connecticut long-arm statute was found not to reach Defendant Color Works, the Court need not inquire into the constitutional due process requirements as applied to them.